**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No.  1:23-CR-81** |
| | ) | |
| HAILONG ZHU, | ) | **Hon. Michael S. Nachmanoff** |
| | ) | |
| | ) | **Hearing: July 12, 2023.** |
| Defendant | | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 1**
**OF THE SUPERSEDING INDICTMENT**

In response to the motion to dismiss the charge of conspiracy to commit bank fraud, the government claims that: (1) it need only allege a "bare minimum" of facts that "track the language of the statute" and allow the defendant to "generally identify the conduct at issue," Gov't Resp. ECF 54 at 4; and (2) the allegations in the superseding indictment sufficiently allege a conspiracy to commit bank fraud. *Id.* at 6-12.

Neither of these responses are true, the first because the government relies on authorities that do not involve fraud charges, and the second because the government fails to distinguish the charged fraud scheme from conduct the Supreme Court excluded from the scope of the bank fraud statute in *Loughrin v. United States*, 573 U.S. 351, 363-64 (2014). The Court should dismiss Count 1 for failure to state a claim and for failure to allege proper venue, and alternatively transfer it.

## I.   The General Allegations in Paragraphs 13 and 14 of the Superseding Indictment Do Not Adequately Allege a Conspiracy to Commit Bank Fraud.

The government maintains that it "has no obligation to allege facts beyond [a] bare minimum" that allow the defendant to "generally identify the conduct at issue." Gov't Resp. ECF 54 at 4. Citing cases that do not involve fraud charges, the government notes that "the Fourth Circuit has found indictments sufficient when they do no more than 'track the language of the statute.'" *Id.* (citing *United States v. Amend*, 791 F.2d 1120, 1124–25 (4th Cir. 1986) (involving CCE), *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1045 (4th Cir. 1987) (conspiring to purchase stolen ammunition), and *United States v. Goff*, 517 F. App'x 120, 123 (4th Cir. 2013) (storing explosives in violation of regulations). Based on these authorities, the government argues that the general allegations in Paragraphs 13 and 14 of the Superseding Indictment are sufficient by themselves to allege the elements of a bank fraud conspiracy in violation of 18 U.S.C. § 1349, even though those paragraphs fail to specifically describe the alleged scheme to defraud or the alleged misrepresentations at issue. *Id.* at 5-6.

Such general allegations are insufficient in the context of federal fraud charges. While the government is correct that "an indictment parroting the language of a federal criminal statute is often sufficient, *there are crimes that must be charged with greater specificity.*" *United States v. Resendiz-Ponce*, 549 U.S. 102, 109-10 (2007) (emphasis added); *accord Russell v. United States*, 369 U.S. 749, 764 (1962) ("Where guilt depends so crucially upon such a specific identification of fact, our cases have

uniformly held that an indictment must do more than simply repeat the language of the criminal statute."); *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.") (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). To be sure, the "gravamen of § 1344 is the 'scheme,' rather than 'the completed fraud[.]'" *Loughrin v. United States*, 573 U.S. 351, 366 n.9 (2014). The government thus need not allege a completed bank fraud. *Cf.* Gov't Resp. ECF 54 at 5. But it must allege with specificity the bank fraud scheme Mr. Zhu purportedly agreed to.

That's because the elements of federal fraud offenses are made up of generic terms (like "scheme to defraud," and "false or fraudulent pretenses"). *See* 18 U.S.C. §§ 1341, 1344. It is "an elementary principle of criminal pleading" that "it is not sufficient that the indictment [containing generic terms] shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *Russell*, 369 U.S. at 765 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)); *accord United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988) (discussing *Russell* and noting that for some offenses, reciting the elements of an offense "does not simultaneously" "apprise the defendant of the nature of the charge"); *United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000) (quoting *Russell*, 369 U.S. at 765, and noting that "the Supreme Court [] has

3

recognized a limitation on th[e] practice" "[u]nder modern pleading rules" of upholding indictments that "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime").

Indeed, in the context of the predecessor to the mail fraud statute, the Supreme Court explicitly rejected the argument that setting "forth the offense in the words of the statute" is sufficient to charge a mail fraud offense. *Hess*, 124 U.S. at 487.[1] To adequately allege a charged fraud scheme, "the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and the circumstances" that outline "all the particulars, constituting the offense of devising a scheme to defraud," because such allegations "are matters of substance, and not of form[.]" *Id.* at 488-89.

Federal fraud charges therefore require charging documents to specifically describe the charged "scheme to defraud," including the misrepresentations that constitute the essential facts at the heart of the offense. *See United States v. Brandon*, 298 F.3d 307, 312 (4th Cir. 2002) (holding that indictment sufficiently alleged conduct that constituted a "scheme to defraud"); *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) (holding that conspiracy to commit mail fraud indictment failed to "specify the false pretenses used"); *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982) ("Indictments alleging a scheme to defraud must provide sufficient facts to

---

[1] Because the "bank fraud statute [] was modeled on the mail and wire fraud statutes," *Neder v. United States*, 527 U.S. 1, 20–21 (1999), courts often look to precedents involving mail or wire fraud to construe the bank fraud statutes. *See, e.g., United States v. Lewis*, 67 F.3d 225, 233 n.12 (9th Cir. 1995) ("Cases interpreting the mail fraud statute are relevant in construing the wire and bank fraud statutes.").

fulfill the purposes of an indictment."); *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (holding that "merely plead[ing] the statutory language" was insufficient, and "some substantial indication of the nature or character of any scheme or artifice to defraud … is requisite"); *see also United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011) (indictment insufficient because alleged violations of 18 U.S.C. § 666 failed to sufficiently describe fraud even though language tracked the statute).

It makes no difference that this case involves a conspiracy charge. "Where the scheme to defraud alleged in the substantive count is not sufficient to state an offense, a conspiracy count based upon the charge must also be found deficient." *United States v. Bobo*, 344 F.3d 1076, 1086 (11th Cir. 2003). Moreover, in *Yefsky*, the government argued that because the indictment in that case charged a conspiracy, general allegations as to the mail fraud object were sufficient to allege the offense without "specify[ing] the false pretenses" at issue. 994 F.2d at 892-93. Rejecting this argument, the First Circuit held that unless the indictment "identif[ied] the fraud that was the ultimate underlying offense," the defendant "could not be expected to defend himself from a charge of conspiring to join a conspiracy to perpetrate a fraud." *Id.* at 893 (quoting *Hamling*, *Russell*, and *Hess*); *see also Curtis*, 506 F.2d at 990 (holding that indictment must allege "the nature of the schemes or artifices … including the particular pretenses, representations or promises claimed to have been false").

*United States v. Brandon*, 298 F.3d 307 (4th Cir. 2002), which involves bank fraud, and *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014), involving social security fraud, fall in the *Hess-Russell-Hamling* line of cases requiring that the government specifically allege the "scheme to defraud" at issue in the indictment. Indeed, the Fourth Circuit in *Brandon* acknowledged that the bank fraud indictment in that case "obviously track[ed] the statutory text of § 1344," 298 F.3d at 311, but went on to address whether the "facts and circumstances" sufficiently described the "scheme to defraud" at issue. *Id.* at 311-12. If the government were correct that an indictment need not allege anything more than the "bare minimum" facts sufficient to state the elements of a fraud offense, the opinion in *Brandon* would have ended after noting that the indictment tracked the statute.

In this case, paragraphs 13 and 14 of the Superseding Indictment simply track the statutory language and further allege that the conspirators sought to obtain and transfer money through unspecified fraudulent misrepresentations. Consequently, unless the other allegations in the indictment sufficiently describe a conspiratorial object that constitutes bank fraud (even uncompleted or without an overt act), the general allegations in these paragraphs are not enough to survive the motion to dismiss count one of the indictment. As described below, even construing the remaining allegations in the indictment to be true, they fail to allege a conspiracy to commit bank fraud.

**II.    The Remaining Allegations in the Superseding Indictment Fail to State a Claim of Bank Fraud as the Object of the Charged Conspiracy.**

Without explaining the basis for its claim that "[t]he defendant repeatedly misconstrues the law governing the scope of what constitutes bank fraud," the government nonetheless argues that the remaining allegations in the indictment "establish bank fraud *even under the defendant's own legal theories*." Gov't Resp. ECF 54 at 6-7 & n.2 (emphasis in orig.).[2]  The government first argues that Paragraphs 44 and 45 (the Virginia allegations) detail bank fraud based upon the allegations that "Victim 1 was fraudulently induced to obtain a loan from a federally insured bank and then further fraudulently induced to send that money to the scammers." *Id.* at 8. Second, it argues that false statements in opening California bank accounts and in conducting wire transfers (the California allegations) also establish bank fraud. *Id.* at 8-12. These arguments are foreclosed by binding precedent.

**A. The Virginia Allegations – Predicated on Paragraph 45 of the Superseding Indictment – Fail To Allege A Bank Fraud Object of the Charged Conspiracy.**

The government's first argument is that even under the construction of § 1344 outlined in *Loughrin v. United States*, 573 U.S. 351 (2014), fraudulently inducing a

---

[2]     In a footnote, the government states that while it "does not agree with [the defense's] legal characterizations," the dispute about "what constitutes bank fraud" "need not be decided here because the allegations are sufficient even under the defendant's proposed standards[.]" Gov't Resp. ECF 54 at 7 n.2. It then says that although the government "*does not address all of its disagreements with the defendant's characterization of the law, it preserves these objections*." *Id.* (emphasis added).

That's not how argument preservation works. *See* Fed. R. Crim. P. 51. To preserve an argument, a party must state "the grounds" for the argument. *Id.* Otherwise it's forfeited.

victim to obtain a bank loan and to turn over the proceeds constitutes bank fraud because the victim is "the custodian of the bank's property." Gov't Resp. ECF 54 at 8. The government is wrong.

As an initial matter, the government's argument wrongly construes § 1344 "as a plenary ban on fraud, contingent only on use of [loan proceeds] (rather than cash)." *Loughrin*, 573 U.S. at 362. In other words, under the government's sweeping construction, any misrepresentation that induces a victim to take out a loan and turn over the money – such as a relative's request for help to pay tuition or buy a house that the relative actually intends to use to pay a gambling debt – constitutes federal bank fraud regardless of whether the misrepresentation has anything to do with the issuance of the bank loan.

"Money is taken from banks every day for countless foolish purposes." *United States v. Thomas*, 315 F.3d 190, 199 (3d Cir. 2002), *abrogated in part on other grounds by Loughrin*, 573 U.S. 351). Lawful loans and withdrawals by account holders that are then turned over to fraudsters, however, do not constitute bank fraud. For example, a well-known fraud scheme discussed by numerous courts (and perhaps a precursor to the alleged "pig butchering" scam outlined in the indictment) is the "pigeon drop" scam, in which a victim is "persuaded to take money or securities out of her own account, convert them into foreign currency, and give the foreign currency to" a fraudster. *See United States v. Blackmon*, 839 F.2d 900, 903 n.2 (2d Cir. 1988) (describing the "pigeon drop" scam).

Prior to *Loughrin*, numerous courts held that such schemes did not constitute bank fraud because it is "abundantly clear that Congress did not intend the bank fraud statute to cover ordinary state law offenses," *United States v. Orr*, 932 F.2d 330, 332 (4th Cir. 1991) (quoting *Blackmon*, 839 F.2d at 905), and such schemes are not designed or intended to expose banks to financial liability. *See United States v. Laljie*, 184 F.3d 180, 190 (2d Cir. 1999); *United States v. Jacobs*, 117 F.3d 82, 94 (2d Cir. 1997), *abrogated by Loughrin v. United States*, 573 U.S. 351 (2014); *United States v. Davis*, 989 F.2d 244, 247 (7th Cir. 1993); *United States v. Staples*, 435 F.3d 860, 867 (8th Cir. 2006); *see also Thomas*, 315 F.3d at 199, 201-02 (discussing *Blackmon*, and holding that fraudulently inducing elderly patient to write valid checks did not constitute bank fraud).

*Loughrin* held that §1344 does not require "a specific intent to deceive a bank." 573 U.S. at 357. Cases like *Thomas* and *Jacobs* have red flags because *Loughrin* rejected the atextual requirement that to violate the statute, defendants must intend "to place the bank at risk." *See Jacobs*, 117 F.3d at 94.[3] But *Loughrin* reaffirmed that § 1344(2) does not encompass "run-of-the-mill frauds, properly of concern only to States[,]" and that the statute is limited textually "to deceptions that have some real connection to a federally insured bank, and thus implicate the pertinent federal

---

[3] "For years, lower courts struggled over whether in a prosecution under sub.(2) the government had to show intent to defraud the bank and, if not, how to otherwise limit the scope of the statute consistent with its purpose.… The Supreme Court resolved the issue in *Loughrin* …. but rather than reading an additional element into the statute noted 'a significant textual limitation on § 1344(2)'s reach.'" *United States v. Braeger*, 2023 WL 2136722, at *4-5 (E.D. Wis. Feb. 21, 2023).

interest." *Id.* at 366. The end result is therefore the same as in the cases that discussed the pigeon drop scheme prior to *Loughrin*: lies to induce a victim to make valid transactions with a bank and turn over money to a fraudster fall outside the scope of federal bank fraud. *Id.* at 365-66.

Paragraphs 44 and 45 of the Superseding Indictment do not allege that *any* misrepresentation was made to a bank to obtain the loan. It says merely that Victim was "instructed" to obtain a loan, and that "around September 2022, Victim 1 therefore obtained a loan for $15,000 from SoFi Bank, N.A." The loan obtained by Victim 1 is, as far as the allegations contained in the Superseding Indictment go, "perfectly valid." *Loughrin*, 573 U.S. at 364.

Pursuant to these allegations, it is "difficult to conceive of any way in which an *authorized*, *nonfraudulent* withdrawal from a bank by one person could constitute a fraudulent obtainment from a bank by another person." *Blackmon*, 839 F.2d at 905 n.4 (emphasis in orig.). The alleged lies designed to induce Victim 1 to obtain a bank loan thus do not constitute bank fraud. *See, e.g.*, *People of Illinois, ex rel. KGB, Inc. v. Breed-Gambino*, 2009 WL 3835452, at *10 (N.D. Ill. Nov. 13, 2009) ("Defendants' alleged actions to induce Bozan to obtain the LaSalle Bank loan and to issue the check do not amount to bank fraud in violation of 18 U.S.C. § 1344. Fraudulently inducing a person to obtain money from a bank is not bank fraud.").

While the government claims without citation that, by obtaining a loan, Victim 1 served as a "custodian" of bank property, that's false. A "custodian" is defined as "one that guards and protects or maintains: one entrusted officially with guarding

and keeping (as property)." *See Gordon v. Liberty Mut. Ins. Co.*, 675 F. Supp. 321, 324 (E.D. Va. 1987) (citing Webster's). In discussing the scope of § 1344(2), the *Loughrin* majority referred to a "custodian" in this sense, explaining that the statute "covers property 'owned by' the bank but in someone else's custody and control (say, a home that the bank entrusted to a real estate company after foreclosure)." 573 U.S. at 357. Borrowers are required to use funds in accordance with a lending or mortgage agreement, but they're not ordinarily "entrusted officially with guarding and keeping" property. Moreover, if borrowers were in fact considered "custodians" of bank property, the government would have been able to identify at least one bank fraud case involving the stealing of funds through fraud from a borrower.

In sum, the government's argument is directly contrary to the Supreme Court's construction of § 1344 in *Loughrin*, which explicitly rejected the claim that inducing a victim to withdraw funds from the victim's bank account (i.e., money "under the custody or control" of the bank) through fraudulent misrepresentations constitutes bank fraud. *Id.* at 361-62. *Loughrin* held that the "defendant's false statement" must be "the mechanism naturally inducing a bank (or custodian of bank property) to part with money under its control." *Id.* at 363. In the case of a loan obtained by a victim, the victim's loan application, not the defendant's false statement, is the key that "naturally induc[es] a bank" to fund the loan.

It is also worth noting that the government makes no response to the argument that "the Superseding Indictment … fails to allege that Mr. Zhu knew anything about the cryptocurrency fraud scheme." Def. Mot. Dismiss ECF 53 at 7. In the absence of

11

any claim by the government that Mr. Zhu knew anything at all about the fraudulent scheme to obtain money from victims, the Court can dismiss the charged bank fraud conspiracy on this ground as well. *See United States v. Fleschner*, 98 F.3d 155, 160 (4th Cir. 1996) ("a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator"); *United States v. Garcia-Torres*, 280 F.3d 1, 4 (1st Cir. 2002) ("no one can join a conspiracy without knowledge of its existence—the gravamen is an agreement to commit an offense.").

**B.    The California Allegations – False Statements to Open California Bank Accounts and Transfer Funds – Do Not State a Bank Fraud Offense in Violation of 18 U.S.C. § 1344(2) and § 1349.**

With respect to allegations related to conduct in California, the government maintains that the question whether false statements to open an account constitute bank fraud "is a question of fact not appropriately resolved at this stage." Gov't Resp. ECF 54, at 9-10 (citing *United States v. Lebedev*, 932 F3d 40 (2d Cir. 2019)). But the government fails to explain how opening an account with false information constitutes a "mechanism naturally inducing a bank (or custodian) to part with its money." *Loughrin*, 573 U.S. at 365; *accord United States v. Braeger*, 2023 WL 2136722, at \*6 (E.D. Wis. Feb. 21, 2023) (relying on *Laughrin* to dismiss bank fraud counts based on false statements in opening business account).

In *Braeger*, the court noted that "Section 1344(2) is not concerned with fraud in opening an account; it requires a false statement inducing a bank to release funds." 2023 WL 2136722, at \*6 n.2. The government does not respond to *Braeger*, but that

court rejected the identical argument the government makes here: "that whether defendant's misrepresentation made the bank part with its money is for the jury to decide …. [and] [t]he indictment avers that defendant's misrepresentation during account opening was an integral part of his scheme to defraud; [and] the government will show defendant needed the bank and the IEF account to accomplish the scheme." *Braeger*, 2023 WL 2136722, at *7.

These arguments were unavailing in that case, like this one, because "the indictment does not allege that defendant's false statement [in opening the California accounts] induced the bank to part with money." *Id.* Moreover, "the reason for the omission seems fairly obvious: the claim would not be true. 'What an individual tells a bank when opening an account does not serve as 'the means' inducing that bank to allow for later withdrawals from that account—the information the account holder communicates when they seek the withdrawals are the means.'" *Id.* at 7 n.4.

The fact that *United States v. Orr*, 932 F.2d 330 (4th Cir. 1991) and *United States v. Davis*, 989 F.2d 244 (7th Cir. 1993), involved decisions on appeal after trials is irrelevant. For purposes of the motion to dismiss, the Court is required to assume as true that Mr. Zhu opened the California bank accounts using false information (even though he opened them using his real identity as the signatory on the accounts). The conclusions in *Orr* and *Davis* – that using false information to open bank accounts does not constitute a means of obtaining bank property – is just as applicable based on the assumption that the government's allegations are accurate as they would be on appeal following a trial. *Orr*, 932 F.2d at 332; *Davis*, 989 F.2d at 246.

13

*United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019), *abrogated on other grounds by Ciminelli v. United States*, 143 S. Ct. 1121 (2023), is distinguishable from this case, *Orr*, *Davis*, and *Braeger*. That case involved a Bitcoin exchange that concealed its identity in conducting transactions with banks because "many banks refuse to transact with businesses dealing in Bitcoins." *Id.* at 46 n.2. Unlike *Lebedev*, this case involves ordinary bank accounts in which "the information the account holder communicates when they seek [to make] withdrawals are the means" by which the bank decides to release money under its control, not [w]hat an individual tells a bank when opening an account." *See Braeger*, 2023 WL 2136722, at *7 n.4. Furthermore, it makes little sense for an initial lie in opening an account – for example, one involving an account opened in a fake name by a person without lawful immigration status to deposit their earnings – to turn all subsequent withdrawals from that account into bank fraud under § 1344(2).

Similarly, the Superseding Indictment's allegations about the destination of wire transfers out of Mr. Zhu's accounts as domestic rather than international does not allege "a false recitation of the authority for [the wire's] issuance." *See United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991). Indeed, the government would have to agree that as the authorized account holder, Mr. Zhu has authority to wire funds from such accounts.

The wiring of money that is already in Mr. Zhu's accounts does not satisfy § 1344(2)'s requirement that prohibited schemes "obtain" bank property "by means of" false pretenses. At that point, the conspirators have already "obtained" the money.

14

*Cf. United States v. Puerta*, 607 F. App'x 635, 636 (9th Cir. 2015) (holding that defendants "use of two names" and "his submission of a Domestic Money Transfer Recall form indicating an alleged false reason for recalling a previous wire transfer" failed to satisfy *Loughrin*'s "relational" requirement "between the alleged false statements or representations and the obtaining of bank property").

The government's claim that § 1344(2) encompasses misrepresentations about *where* an authorized account holder intends for money to ultimately go also would massively expand the statute's reach to potentially encompass any misrepresentation by authorized account-holders (such as a note on a withdrawal slip that money is to pay bills when in fact it's to pay for a golf tee time). Indeed, it "could make federal felons of every small business owner who uses a business account for personal expenses," and "also allow the bank fraud statute to swallow the money laundering statute (at least where, as here, the account is funded with proceeds of unlawful activity and the transactions are of sufficient size)." *Braeger*, 2023 WL 2136722, at *6 n.2. It also would authorize potentially cumulative punishment based on the happenstance of transfers between accounts controlled by the same person.

Finally, the government argues that with respect to Mr. Wong's communications to banks purporting to be the account holder (Mr. Zhu), all that matters is "whether Wong's statements were false." Gov't Resp. ECF 54 at 11. Indeed, the government argues that it would be "absurd" for the defendants' "cumulative behavior" to constitute a defense. *Id.* at 11 n.6.

But as the authorized account holder, Mr. Zhu was both permitted to conduct transactions on the accounts and to assign an agent to conduct transactions on the accounts. *See* Mot. Dismiss ECF 53 at 12-13. With the possible exceptions of antitrust violations and assisted suicide, a defendant cannot violate the law by conspiring to do something that would be *lawful* if done by oneself. *See, e.g., Edwards v. James Stewart & Co.*, 160 F.2d 935, 937 (D.C. Cir. 1947) ("[W]here, as here, the act complained of would have been lawful and privileged if done by the individual appellees acting alone, their joint action under their firm name doing the same lawful act in a lawful manner does not give rise to a cause of action merely because a conspiracy is alleged"); *Bohn Mfg. Co. v. Hollis*, 54 Minn. 223, 234, 55 N.W. 1119, 1121 (1893) ("What one man may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act cannot change its character from lawful to unlawful.").

Like the Virginia allegations, none of the California allegations state a claim of bank fraud. But even if they did, the California allegations do not support venue in this District. Accordingly, if the Court declines to dismiss the bank fraud conspiracy charge, it should transfer it.

16

## CONCLUSION

For the reasons stated herein and in the Motion to Dismiss ECF 53, Mr. Zhu respectfully requests that the Court dismiss Count 1 of the Superseding Indictment for failure to state an offense and failure to allege proper venue.

Respectfully submitted,

HAILONG ZHU
By Counsel

_____-s-_____
Geremy C. Kamens

Geremy C. Kamens, Esq.
Virginia Bar Number 41596
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0848 (T)
(703) 600-0880 (F)
Geremy_Kamens@fd.org (e-mail)